MICHAEL FAILLACE & ASSOCIATES, P.C.
Michael A. Faillace [MF-8436]
60 East 42nd Street, suite 2540
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X

| | |
|---|---|
| BINICIO MORALES, SALVADOR SANCHEZ, and, FABIAN DE JESUS, *individually and on behalf of others similarly situated,* | |
| *Plaintiffs,* | **COMPLAINT** **COLLECTIVE ACTION UNDER 29 U.S.C. § 216(b)** **ECF Case** |
| -against- | |
| AHDS BAGEL LLC, 1101 BAGEL CORP. (d/b/a PICK A BAGEL), ARIEY NUSSBAUM, HAIM WYSOKI, and DOV MOSHE | |
| *Defendants.* | |

-------------------------------------------------------X

Plaintiffs Binicio Morales, Salvador Sanchez, and Fabian De Jesus, individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through their attorneys, Michael Faillace & Associates, P.C., upon their knowledge and belief, and as against AHDS Bagel LLC (d/b/a Pick A Bagel), 1101 Bagel Corp. (d/b/a Pick A Bagel)  ("Defendant Corporations"), Ariey Nussbaum, Dov Moshe and Haim Wysoki, allege as follows:

## **NATURE OF THE ACTION**

1.      Plaintiffs are former employees of defendants AHDS Bagel LLC (d/b/a Pick a Bagel), 1101 Bagel Corp. (d/b/a Pick A Bagel), Ariey Nussbaum, Dov Moshe and Haim Wysoki (collectively "Defendants").

2.       Defendants own, operate, or control a bagel restaurant located at 1101 Lexington Avenue, New York, New York 10075 under the name Pick a Bagel.

3.      Upon information and belief, individual defendants Ariey Nussbaum, Dov Moshe and Haim Wysoki, serve or served as owners, managers, principals, or agents of Defendant Corporations and, through these corporate entities, operate or operated the restaurant as a joint or unified enterprise.

4.      Plaintiffs were ostensibly employed as delivery workers  However, they were required to spend a considerable part of their work days performing non-tipped, non-delivery duties, including but not limited to various restaurant duties such as, transporting bagels, the large containers of cream cheese and spread from the second to the first floor,  refilling the main containers of cream cheese**,** refilling the salad bar with vegetables that were brought down from upstairs, making juices and muffins, cutting bread, cleaning and organizing the basement, preparing bagels, bringing soda cases from the basement refilling the refrigerators, cleaning the restaurant stairs and floor, mopping and dishwashing (hereafter the "non-tipped, non-delivery duties").

5.      At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate minimum wage, overtime and spread of hour's compensation for the hours that they worked.

6.      Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.      Further, Defendants failed to pay Plaintiffs the required "spread of hours" pay for any day in which they had to work over 10 hours a day.

8.      Defendants employed and accounted for Plaintiffs as delivery workers in their payroll, but in actuality their duties required a significant amount of time spent performing the non-tipped duties alleged above.

9.      Regardless, at all relevant times, Defendants paid Plaintiffs at a rate that was lower than the minimum wage rate.

10.     However, under both the FLSA and NYLL, Defendants were not entitled to take a tip credit because Plaintiffs' non-tipped duties exceeded 20% of each workday, or 2 hours per day, whichever is less in each day.  12 N.Y. C.R.R. §146.

11.     Upon information and belief, Defendants employed the policy and practice of disguising Plaintiffs' actual duties in payroll records by designating them as delivery workers instead of non-tipped employees. This allowed Defendants to avoid paying Plaintiffs at the minimum wage rate and enabled them to pay them above the tip-credit rate, but below the minimum wage.

12.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

13.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without

providing the minimum wage and overtime compensation required by federal and state law and regulations.

14.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), and the "spread of hours" and overtime wage orders of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. tit. 12, § 146-1.6 (herein the "Spread of Hours Wage Order"), including applicable liquidated damages, interest, attorneys' fees and costs.

15.     Plaintiffs seek certification of this action as a collective action on behalf of themselves individually and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

17.     Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate a bagel restaurant located in this district.  Further, Plaintiffs were employed by Defendants in this district.

## THE PARTIES

*Plaintiffs*

18.    Plaintiff Binicio Morales ("Plaintiff Morales" or "Mr. Morales") is an adult individual residing in New York County, New York.

19.    Plaintiff Morales was employed by Defendants from approximately October 2018 until May 2020.

20.    Plaintiff Salvador Sanchez ("Plaintiff Sanchez" or "Mr. Sanchez") is an adult individual residing in Bronx County, New York.

21.    Plaintiff Sanchez was employed by Defendants from approximately 2001 until May 2020

22.    Plaintiff Fabian De Jesus ("Plaintiff De Jesus" or "Mr. De Jesus") is an adult individual residing in Bronx County, New York.

23.     Plaintiff De Jesus was employed by Defendants from approximately May 15, 2014 until July 2018.

*Defendants*

24.    At all relevant times, Defendants owned, operated, or controlled a bagel restaurant located at 1101 Lexington Avenue, New York, New York 10075 under the name "Pick a Bagel".

25.    Upon information and belief, AHDS Bagel LLC (d/b/a Pick a Bagel) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 1101 Lexington Avenue, New York, New York 10075.

26.    Upon information and belief, 1101 Bagel Corp. (d/b/a Pick a Bagel) is a domestic corporation organized and existing under the laws of the State of New York. Upon information

- 5 -

and belief, it maintains its principal place of business at 1101 Lexington Avenue, New York, New York 10075.

27.     Defendant Ariey Nussbaum is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Ariey Nussbaum is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations. Defendant Ariey Nussbaum possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, and controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

28.     Defendant Dov Moshe is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Dov Moshe is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations.  Defendant Dov Moshe possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

29.     Defendant Haim Wysoki is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period.  Defendant Haim Wysoki is sued individually in his capacity as owner, officer and/or agent of the Defendant Corporations. Defendant Haim Wysoki possesses operational control over Defendant Corporations, an ownership interest in Defendant Corporations, or controls significant functions of Defendant

- 6 -

Corporations. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

30.     Defendants operate a bagel restaurant located in the Upper East Side section of Manhattan in New York City.

31.     Individual defendants, Ariey Nussbaum, Dov Moshe and Haim Wysoki, possess operational control over Defendant Corporations, possess ownership interests in Defendant Corporations, and control significant functions of Defendant Corporations.

32.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

33.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

34.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

35.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

36.     Upon information and belief, individual defendants Ariey Nussbaum, Dov Moshe and Haim Wysoki, operate Defendant Corporations as either as alter egos of themselves and/or fail to operate Defendant Corporations as entities legally separate and apart from themselves, by among other things:

    a.  failing to adhere to the corporate formalities necessary to operate Defendant Corporations as Corporations,

    b.  defectively forming or maintaining the corporate entities of Defendant Corporations, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

    c.  transferring assets and debts freely as between all Defendants,

    d.  operating Defendant Corporations for their own benefit as the sole or majority shareholders,

    e.  operating Defendant Corporations for their own benefit and maintaining control over it as closed Corporations,

    f.  intermingling assets and debts of their own with Defendant Corporations,

    g.  diminishing and/or transferring assets of Defendant Corporations to avoid full liability as necessary to protect their own interests, and

    h.  other actions evincing a failure to adhere to the corporate form.

37.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

38.     In each year, from 2014 to 2020, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

39.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that are used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

40.     Plaintiffs are former employees of Defendants who were employed as a bagel cook, dishwasher, porter and ostensibly as delivery workers. However, the delivery workers spent over 20% of each shift performing the non-tipped, non-delivery duties described above.

41.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Binicio Morales*

42.     Plaintiff Morales was employed by Defendants from approximately October 2018 until May of 2020.

43.     Defendants employed Plaintiff Morales as a dishwasher, porter and ostensibly as a delivery worker.

44.     However, Plaintiff Morales was also required to spend a significant portion of his work day performing the non-tipped duties described above.

45.     Although Plaintiff Morales ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

46.     Specifically, Plaintiff Morales spent two or more hours per day performing non-delivery work, including restocking sodas, washing dishes, organizing incoming inventory, taking out the trash, cleaning the refrigerators, bathrooms, and floors. This time constituted more than 20% of his work day.

47.     Plaintiff Morales regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

48.     Plaintiff Morales's work duties required neither discretion nor independent judgment.

49.     Throughout his employment with Defendants, Plaintiff Morales regularly worked in excess of 40 hours per week.

50.     From approximately October 2018 until on or about October 2019, Plaintiff Morales worked from approximately 5:00 A.M. until on or about 2:00 P.M., five days per week and from approximately 5:00 A.M. until on or about 2:30 P.M.  or 3:00 p.m. one day per week (typically 54 to 55 hours per week).

51.     From approximately November 2019 until on or about May 2020, Plaintiff Morales worked from approximately 5:00 A.M. until on or about 2:00 P.M., four days per week and from approximately 5:00 A.M. until on or about 2:30 P.M., or 3:00 p.m. one day per week (typically 45 to 46 hours per week).

52.     At all times during his employment with Defendants, Defendants paid Plaintiff Morales his wages by check.

53.     From approximately October 2018 until on or about October 2019, defendants paid Plaintiff Morales $13.00 per hour for all hours worked.

54.     From approximately January 2019 until on or about May 2020, defendants paid Plaintiff Morales $15.00 per hour for all hours worked.

55.     Plaintiff Morales's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

56.     For example, Defendants required Plaintiff Morales to work an additional 30 minutes to one hour past his scheduled departure time one day per week, and did not pay him for the additional time he worked.

57.     Defendants did not grant Plaintiff Morales any breaks or meal periods of any kind.

58.     Plaintiff Morales was never notified by Defendants that his tips were being included as an offset for wages.

59.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Morales's wages.

60.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Morales regarding overtime and wages under the FLSA and NYLL.

61.     Defendants did not provide Plaintiff Morales an accurate statement of wages, as required by NYLL 195(3).

62.     Instead, defendants provided Plaintiff Morales pay stubs that did not accurately document his hours or wages.

63.     Defendants required Plaintiff Morales to sign a document in order to release his pay. However, the documents were in English, which Plaintiff Morales does not read, and they were not translated for him.

64.     Defendants took improper and illegal deductions from Plaintiff Morales's wages; specifically, defendants deducted one hour from Plaintiff Morales's wages whenever he arrived

10 to 15 minutes late.

65.     Defendants did not give any notice to Plaintiff Morales, in English and in Spanish (Plaintiff Morales's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

66.     During his employment, Defendants required Plaintiff Morales to pay for his own tools of the trade, including an electric bicycle for $1800.00 and a helmet for $50.00.

*Plaintiff Salvador Sanchez*

67.     Plaintiff Sanchez was employed by Defendants from approximately 2001 until on or about May 2020.

68.     Defendants employed Plaintiff Sanchez as a delivery worker, but in practice is additionally worked as a cook and cleaner.

69.     However, Plaintiff Sanchez was also required to spend a significant portion of his work day performing the non-tipped duties described above.

70.     Although Plaintiff Sanchez ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

71.     Plaintiff Sanchez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

72.     Plaintiff Sanchez's work duties required neither discretion nor independent judgment.

73.     Throughout his employment with Defendants, Plaintiff Sanchez regularly worked in excess of 40 hours per week.

74.     From approximately August 2014 until on or about December 2019, Plaintiff Sanchez worked from  approximately 5:30 A.M. until on or about 2:30 p.m. two days a week and

from approximately 5:30 A.M. until on or about  7:00 or 8:00 p.m. four days a week (typically 77 hours per week).

75.     From approximately December 2019 until on or about May 2020, Plaintiff Sanchez worked from approximately 5:00 A.M. until on or about 2:00 p.m., five days per week (typically 45 hours per week).

76.     From approximately August 2014 until December 2019, Defendants paid Plaintiff Sanchez in a combination of cash and checks.

77.     From approximately December 2019 until May 2020, Defendants paid Plaintiff Sanchez via check.

78.     From approximately August 2014 until December 2019, Defendants paid Plaintiff Sanchez a fixed salary of $650.00 per week, partially in cash and partially in checks. This amount never varied. However, the pay stubs that Defendants provided Plaintiff Sanchez falsely stated that he was paid $11 per hour in 2014-2015, $14 per hour in 2016-2018, and $15 per hour in 2019.

79.     From approximately December 2019 until the end of his employment in May 2020, Defendants paid Plaintiff between $425 and $550 per week.

80.     Defendants never granted Plaintiff Sanchez a meal break or rest period of any kind.

81.     Plaintiff Sanchez was never notified by Defendants that his tips were being included as an offset for wages.

82.     Defendants did not account for these tips in any daily or weekly accounting of Plaintiff Sanchez's wages.

83.     At all times during Plaintiff Sanchez's employment with Defendants, they utilized a punch card machine to track employees' time. However, Plaintiff Sanchez was consistently ordered to punch out at 2:30 p.m., but continue working until 7:00 p.m. or 8:00 p.m. . .

84.     Defendants required Plaintiff Sanchez to sign a document in order to release his pay. However, the documents were in English, which Plaintiff Sanchez does not read, and they were not translated for him.

85.     Defendants took improper and illegal deductions from Plaintiff Sanchez's wages; specifically, defendants deducted one hour from Plaintiff Sanchez's wages whenever he arrived 10 to 15minutes late.

86.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Sanchez regarding overtime and wages under the FLSA and NYLL.

87.     Defendants did not provide Plaintiff Sanchez an accurate statement of wages, as required by NYLL 195(3).

88.     Instead, defendants provided Plaintiff Sanchez pay stubs falsely showing that he only worked 40 hours a week.

89.     Defendants did not give any notice to Plaintiff Sanchez, in English and in Spanish (Plaintiff Sanchez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

90.     During his employment, Defendants required Plaintiff Sanchez to purchase tools of the trade, including a bicycle for $750.00.

*Plaintiff Fabian De Jesus*

91.     Plaintiff De Jesus was employed by Defendants from approximately May 15, 2014 until on or about July of 2018.

92.     Defendants employed Plaintiff De Jesus as a delivery worker, but in practice he additionally worked as a cleaner and stocker.

- 14 -

93.     Plaintiff De Jesus was required to spend a significant portion of his workday performing the non-tipped duties described above.

94.     Although Plaintiff DeJesus ostensibly was employed as a delivery worker, he spent over 20% of each day performing non-tipped work throughout his employment with Defendants.

95.     Plaintiff De Jesus regularly handled goods in interstate commerce, such as food and other supplies, produced outside the State of New York.

96.     Plaintiff De Jesus's work duties required neither discretion nor independent judgment.

97.     From approximately May 15, 2014 until on or about May of 2015, Plaintiff DeJesus worked from approximately 5:00 A.M. until on or about 2:30 p.m., six days per week (typically 57 hours per week).

98.     From approximately June of 2015 until on or about July of 2018, Plaintiff De Jesus worked from approximately 5:00 A.M. until on or about 1:00 p.m., five days per week (typically 40 hours per week).

99.     At all times during his employment with Defendants, Defendants paid Plaintiff De Jesus in a combination of cash and checks.

100.    From approximately May 15, 2014 until December 2014, Defendants paid Plaintiff De Jesus a fixed salary of $400 per week.

101.    From approximately January 2015 until December 2015, Defendants paid Plaintiff De Jesus a fixed salary of $420 per week.

102.    From approximately January 2016 until July of 2018, Defendants paid Plaintiff De Jesus $13 per hour.

103.    Plaintiff De Jesus's pay did not vary even when he was required to stay later or

work a longer day than his usual schedule.

104.    For example, Defendants required Plaintiff De Jesus to work an additional 30 minutes past his scheduled departure time two or three days per week and did not pay him for the additional time he worked.

105.    Defendants never granted Plaintiff De Jesus a meal break or rest period of any kind.

106.    Plaintiff De Jesus was never notified by Defendants that his tips were being included as an offset for wages.

107.    Defendants did not account for these tips in any daily or weekly accounting of Plaintiff De Jesus's wages.

108.    No notification, either in the form of posted notices or other means, was ever given to Plaintiff De Jesus regarding overtime and wages under the FLSA and NYLL.

109.    Defendants did not give any notice to Plaintiff De Jesus, in English and in Spanish (Plaintiff De Jesus's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

110.    During his employment, Defendants required Plaintiff DeJesus to purchase tools of the trade, including a bicycle for $300.00, a lock for $60, and a chain for $40.

<em>Defendants' General Employment Practices</em>

111.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate minimum wage, spread of hours pay and overtime compensation as required by federal and state laws.

112.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

113.    Defendants' pay practices resulted in Plaintiffs not receiving payment for all their hours worked, and resulting in Plaintiffs' effective rate of pay falling below the required minimum wage rate.

114.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

115.    Defendants required all delivery workers to perform general non-delivery, non-tipped restaurant tasks in addition to their primary duties as delivery workers.

116.    Plaintiffs, and all similarly situated employees, ostensibly were employed as tipped employees by Defendants, although their actual duties included a significant amount of time spent performing non-delivery, non-tipped duties.

117.    Plaintiffs and all other delivery workers were paid below the minimum wage required by New York State law.

118.    However, under state law, Defendants were not entitled to a tip credit because the delivery workers' non-tipped duties exceeded 20% of each workday (or 2 hours a day, whichever is less) (12 N.Y.C.R.R. § 146).

119.    New York State regulations provide that an employee cannot be classified as a tipped employee on any day in which he has been assigned to work in an occupation in which tips are not customarily received. (12 N.Y.C.R.R. §§137-3.3 and 137-3.4). Similarly, under federal regulation 29 C.F.R. §531.56(e), an employer may not take a tip credit for any employee time if that time is devoted to a non-tipped occupation.

120.    The delivery workers', including Plaintiffs' duties were not incidental to their occupation as delivery workers, but instead constituted entirely unrelated general restaurant work with duties, including the non-tipped duties described above.

121.    In violation of federal and state law as codified above, Defendants classified Plaintiffs and other tipped workers as tipped employees, and paid them at a rate that was below minimum wage when they should have classified them as non-tipped employees and paid them at the minimum wage rate.

122.    Defendants failed to inform Plaintiffs who received tips that Defendants intended to take a deduction against Plaintiffs' earned wages for tip income, as required by the NYLL before any deduction may be taken.

123.    Defendants failed to inform Plaintiffs that their tips were being credited towards the payment of the minimum wage.

124.    Defendants failed to maintain a record of tips earned by Plaintiffs for the deliveries they made to customers.

125.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

126.    Defendants' time keeping system did not reflect the actual hours that Plaintiffs worked.

127.    Defendants required Plaintiffs to sign documents the contents of which they were not allowed to review.

128.    Plaintiffs were paid their wages in a combination of check and cash

- 18 -

129.   Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

130.    Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

131.   Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

132.   Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated current and former workers.

133.    Defendants failed to provide Plaintiffs and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

134.    Defendants failed to provide Plaintiffs and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

135.    Plaintiffs bring their FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants on or after the date that is three years before the filing of this Complaint (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

136.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions.

137.    At all relevant times, Plaintiffs, and other members of the FLSA Class who are and/or have been similarly situated, have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them minimum wage and overtime at a one and one-half times their regular rates for work in excess of forty (40) hours per workweek.

138.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
### (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

139.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

140.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).  Defendants had the power to hire and fire Plaintiffs, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for their employment.

141.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

142.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

143.    In violation of 29 U.S.C. § 206(a), Defendants failed to pay Plaintiffs at the applicable minimum hourly rate.

144.    Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

145.    Plaintiffs were damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

146.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

147.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

148.    Defendants' failure to pay Plaintiffs, and the putative FLSA Class members, overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

149.    Plaintiffs were damaged in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

150.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

151.    At all times relevant to this action, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.  Defendants had the power to hire and fire Plaintiffs, controlled their terms and conditions of employment, and determined the rates and methods of any compensation in exchange for their employment.

152.    Defendants, in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor, paid Plaintiffs less than the minimum wage.

153.    Defendants' failure to pay Plaintiffs the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

154.    Plaintiffs were damaged in an amount to be determined at trial.

### FOURTH CAUSE OF ACTION
### (VIOLATION OF THE OVERTIME PROVISIONS OF THE
### NEW YORK STATE LABOR LAW)

155.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

156.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq.*, and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

157.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

158.    Plaintiffs were damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATION OF THE SPREAD OF HOURS WAGE ORDER OF THE NEW YORK COMMISSIONER OF LABOR)

159.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

160.    Defendants failed to pay Plaintiffs one additional hour's pay at the basic minimum wage rate before allowances for each day Plaintiffs' spread of hours exceeded ten hours in violation of NYLL §§ 650 *et seq*. and 12 N.Y.C.R.R. §§ 146-1.6.

161.    Defendants' failure to pay Plaintiffs an additional hour's pay for each day Plaintiffs' spread of hours exceeded ten hours was willful within the meaning of NYLL § 663.

162.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
### (VIOLATION OF THE NOTICE AND RECORDKEEPING REQUIREMENTS OF THE NEW YORK LABOR LAW)

163.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

164.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

165.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION
### (VIOLATION OF THE WAGE STATEMENT PROVISIONS OF THE NEW YORK LABOR LAW)

166.     Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

167.     With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

168.     Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF EQUIPMENT COSTS

169.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

170.     Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL.  29 U.S.C.  § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

171.     Plaintiffs were damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION OF THE NEW YORK LABOR LAW

172.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

173.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

174.    Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for arriving late to work.

175.    The deductions made from Plaintiffs' wages were not authorized or required by law.

176.    Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

177.    Plaintiffs were damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)    Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)    Declaring that Defendants violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

- 25 -

(c)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs (including the prospective collective class members);

(d)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' (and the prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e)     Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiffs (including the prospective collective class members);

(f)     Awarding Plaintiffs (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g)     Awarding Plaintiffs (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h)     Declaring that Defendants violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(i)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(j)     Declaring that Defendants violated the spread-of-hours requirements of the NYLL and supporting regulations;

(k)     Declaring that Defendants violated the notice and recordkeeping requirements of

the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(l)     Awarding Plaintiffs damages for the amount of unpaid minimum and overtime wages, and for any improper deductions or credits taken against wages, as well as awarding spread of hours pay under the NYLL as applicable;

(m)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage, spread of hours pay and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o)     Awarding Plaintiffs (including the prospective collective class members) pre-judgment and post-judgment interest as applicable;

(p)      Awarding Plaintiffs (including the prospective collective class members) the expenses incurred in this action, including costs and attorneys' fees;

(q)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r)     All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York
August 17, 2020

                                      MICHAEL FAILLACE & ASSOCIATES, P.C.

By:             /s/ Michael Faillace
              Michael Faillace [MF-8436]
              MICHAEL FAILLACE & ASSOCIATES, P.C.
              Michael A. Faillace [MF-8436]
              60 East 42nd Street, suite 2540
              New York, New York 10165
              Telephone: (212) 317-1200
              Facsimile: (212) 317-1620